STATE of Alaska, Appellant,

v.

Vernon Dale SIMPSON, d/b/a Columbia
Cleaners, Appellee.

No. 424.

Supreme Court of Alaska.

Dec. 9, 1964.

George N. Hayes, Atty. Gen., and
Michael M. Holmes, Deputy Atty. Gen.,
Juneau, for appellant.

C. L. Cloudy, Ziegler, Ziegler & Cloudy,
Ketchikan, for appellee.

Before NESBETT, C. J., AREND, J.,
and MOODY, Superior Court Judge.

NESBETT, Chief Justice.

The question is whether appellant state
should be held to be equitably estopped from
ejecting appellee from the street right of
way occupied by him without paying com-
pensation for appellee's improvements lo-
cated on the right of way.

The property with which we are concern-
ed was originally conveyed by the United
States of America to Eugene A. Heath in
1922. In the same year it was subdivided
and a plat of the Heath Addition to the
City of Ketchikan was filed in the office of
the United States Commissioner at Ketchi-
kan. This plat showed a sixty foot right of
way for Charcoal Boulevard which is now
known as Tongass Avenue.

In 1924 Heath conveyed a portion of the
subdivided property to one Ed Fredrick-
son. This is the original conveyance in the
defendant's chain of title.

The following language was contained in
at least five conveyances of property made
between 1922 and 1924, including that con-
veyed to Ed Frederickson:

"Heath addition to the City of Ketchi-
kan according to the subdivisional sur-
vey and plat made by A. A. Wakefield
on file in the Office of the U. S. Com-
missioner at Ketchikan, Alaska."

In 1952 a conveyance was executed from
Joseph A. Durgin, trustee, to William W.
Crow and Vernon Dale Simpson. A part
of the property description of this convey-
ance stated:

"Thence from point of beginning
North 5° 36′ East to intersect the new
right of way of Tongass Avenue on its
seaward side. * * *"

In 1957 Crow conveyed his interest in the
property to appellee Simpson.

A portion of the property conveyed to the
appellee lies wholly within the boundaries
of the street shown as Charcoal Boulevard

on the plat of the Heath addition. At the time the patent was issued to Heath a plank roadway commenced at the east boundary of the survey and extended approximately 792 feet across the front of the survey. The plank roadway crossed in front of the property here in dispute. In 1926 a log bulkhead to support Charcoal Boulevard was constructed by the Territory of Alaska along the front of the property which now belongs to the appellee. The log bulkhead actually extended into the area shown on the original plat as Charcoal Boulevard. The owner of the property at the time the bulkhead was constructed built a boathouse and private sidewalk up to the log bulkhead, which was to the edge of the existing street, and also constructed his dock, used in connection with the boathouse, to the existing street.

According to the statement of Ed Fredrickson, who then owned the property, it was not then known that the right of way for Charcoal Boulevard actually extended twenty feet beyond the edge of the street toward the water which would be into the property occupied by Fredrickson. He stated that it was his understanding that he owned the property up to the street; that he built right up to the street and that he was never notified by anyone that he was occupying the property shown on the plat as right of way for Charcoal Boulevard.

It was stipulated by the parties that the owners of the property in dispute between 1945 and 1952 would testify that they claimed the entire disputed area as their own; that no one on behalf of any city, territory, state or other governmental entity laid any claim to the area during their ownership; that they occupied the entire area to the exclusion of all others; that they had no actual knowledge that the disputed area occupied by them was within the platted right of way of Charcoal Boulevard.

A one story frame building twenty-five feet wide and fifty-five feet long on fixed driven piling along with trade furniture and fixtures as necessary to operate a dry cleaning establishment is presently located on the area in dispute. The front twenty-five feet of the building are located on the right of way. The present stipulated value of all the improvements located on the right of way and the adjoining lot is $28,000. It is agreed that severance of that portion of the building located on the right of way from the remainder would result in the constructive total loss of the entire building.

In the case before us the trial court found that in excess of forty years of nonuser of the right of way by governmental authority coupled with eight significant affirmative acts by that authority caused the property owners to believe they owned the adjoining area in question and in reliance upon that reasonable belief constructed or acquired valuable improvements on the right of way and that it would be inequitable to force appellee off the right of way without paying him just compensation for these improvements; that to do so would violate the constitution and laws of the State of Alaska.

Appellant's argument is that equitable estoppel should only be applied where a governmental body has urged a property owner to construct valuable improvements on dedicated public property and later attempts to oust the property owner without the payment of compensation for improvements made.

Appellee contends that the facts of this case warrant the application of the doctrine of equitable estoppel against appellant and cites as precedent in support of its position a series of decisions of the Supreme Court of Oregon. Appellant interprets the latest of the Oregon decisions as representing a definite trend away from the application of the doctrine.

We shall consider the Oregon authorities as well as others cited by counsel in the following paragraphs.

In City of Portland v. Inman-Poulsen Lumber Co.[1] the mayor and council of the

1. 66 Or. 86, 133 P. 829 (1913).

city encouraged the appellee lumber company in 1890 to construct a large lumber mill in an area which contained dedicated platted streets by advising the lumber company that the city laid no claims to the streets. As a result the lumber mill was constructed. After it burned down in 1906 it was reconstructed on a scale that made it the largest lumber mill in the world. Two years later in 1908 the city for the first time claimed the right to open streets through the property. Opening the streets would have destroyed the mill. It was held that the city was equitably estopped to claim the right to open the streets in view of the representations made by its agents in order to induce the lumber company to construct the mill. However, the estoppel was held to apply only so long as the area was occupied and used for lumber mill purposes. Both parties seem agreed that the strong facts of this case place it in a class by itself. The holding is significant in that it indicates that the Oregon court recognized the doctrine of equitable estoppel and applied it against a municipality where there was a recorded plat and dedicated streets.

Dabney v. City of Portland [2] was decided fifteen years after Inman-Poulsen. The city had failed to use the right of way for forty-seven years, had levied and collected taxes on it from those claiming to own it and had constructed a sidewalk in such a manner as to suggest that the walk marked the limits of the right of way. In reliance thereon Dabney and his predecessors had occupied the area and constructed concrete steps extending about four feet into the street area. The court held that the conduct of the city had caused Dabney to reasonably believe that it had the intention of abandoning the strip of land and that it would amount to a fraud to permit the city to destroy the improvements without paying compensation.

Appellee relied heavily upon this case below and the trial court appears to have agreed with appellee's interpretation of the decision as a persuasively reasoned authority.

Three years later in Killam v. Multnomah County,[3] the deed referred to road restrictions and a recorded plat showed the street dedicated to the municipality. The Oregon court refused to apply equitable estoppel saying that conduct on the part of the city which would have led plaintiff on to do acts which it would be against equity and good conscience to permit the city to disavow was not shown.

In 1951 in City of Molalla v. Coover [4] an area was annexed and a plat recorded which showed dedicated streets. The Oregon Supreme Court again refused to apply equitable estoppel against the city where plaintiff had occupied a part of a dedicated street for nineteen years and had built a barn therein. It was held that failure of municipal officers to affirmatively assert the rights of the city, where dedicated but as yet unused streets are being occupied, cannot serve as a basis for equitable estoppel. The appellee was held to be charged with notice of the recorded plat showing dedicated street areas. Having held that tacit acquiescence by municipal officers could not serve as a basis for equitable estoppel, the court went on to say at page 150 of 235 P. 2d:

"Whether estoppel may in exceptional cases be predicated upon affirmative action by a city or its officers need not be and is not here decided."

In addition to the facts recited earlier in this opinion, appellee relied upon the following to support its contention that equitable estoppel should be applied because of affirmative acts committed by governmental agents:

(1) In 1935–36 the Bureau of Public Roads purchased land across the street from the disputed property in order to widen the street, instead of asserting its ownership of the property in dispute.

2. 124 Or. 54, 263 P. 386 (1928).
3. 137 Or. 562, 4 P.2d 323, 325 (1931).
4. 192 Or. 233, 235 P.2d 142, 150 (1951).

The owners of the disputed property were assessed their proportionate share of the cost of the property purchased.

(2) In 1936 the area in dispute was annexed to the City of Ketchikan and since that date the occupants of the disputed property have been assessed taxes on that property.

(3) In 1939 a city ordinance required the laying of copper water lines to property lines. A copper line was duly installed by the city which extended only to the log bulkhead and not beyond.

(4) In 1944 the owner of property adjacent to that here in dispute contracted with the city to trade a narrow strip of land fronting his property to the city if the city would construct a sidewalk on the land. The contract was performed, although the land traded to the city already belonged to it since it was a part of the same dedicated but unoccupied right of way that fronted on appellee's property.

(5) In 1952 appellee was supervised by the Ketchikan City Manager as he remodeled the building on the property in dispute for a dry cleaning plant in a manner which indicated that the City Manager believed that appellee owned the property in dispute.

The parties have also cited and relied upon City of Billings v. Pierce Packing Co.[5] and Town of Chouteau v. Blankenship.[6] In the latter case the court held that mere delay in opening a street created by dedication when the public has not required its use does not constitute abandonment of the street. It was also held that in the absence of a contrary statute title to streets created by dedication is held by the municipality in trust for the public and not in a proprietary capacity. A municipality cannot be divested of title to its streets held in trust for the public by adverse possession. In the case before it the court found that the street created by dedication had not been opened, improved or used for public purposes for over thirty years and that barns, chicken houses and outhouses were built on the area by the owners of adjoining property. The court held that although the doctrine of equitable estoppel might preclude the right of a municipality to assert title to a street, such a doctrine would not be applied except in exceptional cases and with great caution. It was held not to apply in the facts of the case before it. It is of interest to note in Town of Chouteau at 384 where the court mentions that it had in a previous case applied the doctrine of equitable estoppel to a municipality with respect to property held in its proprietary capacity, but that in no case called to its attention had the court ever applied the doctrine to property held in trust for the public. The court, in remarking that exceptional circumstances which would call the doctrine into play were not present in the case before it, said the doctrine would not therefore be applicable, "* * * if in fact it would ever be justified as regards streets."

We are impressed by and shall follow what appears to be the better reasoning and majority rule as set out in the Town of Chouteau and City of Molalla cases. Accordingly, we hold that the right of way dedication along Charcoal Boulevard, now known as Tongass Avenue, was held in trust for the public. The failure of municipal and other governmental officers to affirmatively assert governmental rights where the dedicated but as yet unused street was being occupied by appellee and his predecessors cannot serve as a basis for equitable estoppel.

Appellee and his predecessors had constructive notice of the fact that the seaward side of the Tongass Avenue right of way extended twenty-five feet beyond what appeared to be the front property line, since the original conveyance in their chain of title referred to and incorporated into its

5. 117 Mont. 255, 161 P.2d 636 (1945).

6. 194 Okl. 401, 152 P.2d 379, 171 A.L.R. 87 (1944).

property description the recorded subdivisional survey and plat. In addition, the conveyance by which appellee first obtained any interest in the property specifically referred in the property description to "* * * the new right of way of Tongass Avenue on its seaward side. * * *"

Neither the United States, the Territory of Alaska, the City of Kechikan nor the State of Alaska, nor any of their agents have made any specific representations to appellee or his predecessors in interest that could reasonably lead him or them to believe that the area had been abandoned as a street right of way, or that would mislead them into believing that they owned the disputed area.

The various acts attributable to the several different governments concerned with the property since 1922 are all explained by the fact that those governments and their agents were acting under a mistaken view as to the location of the correct property line. None of the acts relied upon by appellee and classed as "affirmative acts" are in the nature of a representation such as was involved in City of Portland v. Inman-Poulsen Lumber Co.

It is true that appellee and his predecessors in interest have paid taxes on the disputed area since 1936. On the other hand, they have had the rent free use of some 761 square feet of business property for the same period of years.

The judgment below is reversed. The case is remanded to the Superior Court for the entry of findings of fact, conclusions of law and judgment in accordance with the views expressed herein.