Phyllis OGAR, Appellant,

v.

CITY OF HAINES, Appellee.

No. S–9812.

Supreme Court of Alaska.

July 19, 2002.

Tony Strong, Law Offices of Tony Strong & Associates, Juneau, for Appellant.

Ronald W. Lorensen and Merrill Lowden, Simpson, Tillinghast, Sorensen & Longenbaugh, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Did a city's prior failures to require property owners to remove structures that violated its right-of-way and setback requirements equitably estop the city from requiring the current landowner to remove them? Because the city asserted no "position by conduct or word," a necessary element for equitable estoppel was absent. We therefore affirm the grant of summary judgment for the city. We also affirm the superior court's award of attorney's fees against the landowner.

## II. FACTS AND PROCEEDINGS

This appeal concerns claims Phyllis Ogar brought against the City of Haines in 1999, but it originates in the city's dealings with the prior owners of Ogar's land.

In June 1989 Gloria and Larry Schmidt asked the City of Haines to vacate a ten-foot portion of Pyramid Drive, a dedicated right-of-way owned by the city. Pyramid Drive bordered the Schmidts' property on the east. The city council approved the vacation. To complete the vacation, the Schmidts were to have the land surveyed and replatted by a registered land surveyor, and were to pay the city the current value of the vacated land. Because the Schmidts failed to take these steps, the vacation was not completed. In July 1990 the Schmidts nonetheless applied for a land use permit to build a residential garage. They submitted with their permit application a hand drawing of the proposed garage, the existing garage, and their house. The drawing indicated that the new garage would be set back forty feet from F.A.A. Road on the north and ten feet from the Pyramid Drive right-of-way on the east. The planning commission approved the permit (Permit No. 90–25) that same month. The Schmidts then built the garage, but instead of sitting ten feet from the Pyramid Drive right-of-way as depicted in the drawing, the garage encroached on the city's right-of-way by 20.8 feet. The city did not inspect the property before or after the garage was built and did not require an as-built survey.

Phyllis Ogar claimed that she and her late husband purchased the Schmidts' property without knowing of the encroachment. Neither the city nor Ogar became aware of the encroachment until 1997, when a neighbor reported that Ogar was clearing wood from the right-of-way, and the city investigated. Ogar applied then for a thirty-foot vacation of the right-of-way to accommodate the garage, a ten-foot overhang extension on the garage, and a fuel tank beside the garage. The city administrator recommended the vacation, noting that the right-of-way had limited use because one part of Pyramid Drive narrowed to thirty feet, but recommended that the city retain the rest of Pyramid Drive as a possible utility right-of-way. He informed the planning commission that the va-

cation would not restrict access to other properties.

In August 1998 the city planning commission conducted a hearing on Ogar's vacation application. Ogar requested the vacation to allow compliance with the city's land use code and to obtain clear title to her property, which she argued was encumbered by the encroachment. Members of the community spoke out against the vacation during the hearing. Members of the community had submitted a petition and letters to the planning commission earlier that month to oppose granting any new vacation of rights-of-way.

The commission approved a fifteen-foot vacation and a setback variance for Ogar to accommodate the garage for which the Schmidts had obtained the permit; but the city required Ogar to remove the ten-foot overhang and the fuel tank, have the property replatted by a surveyor, submit the plat to the city, and pay the current value of the vacated property.[1] The city referred to the overhang as "the removable shed" because members of the community stated at the hearing that the Schmidts had bolted it to the permanent garage, making it easily removable. The city decided to reimburse Ogar for the property taxes she paid to the Haines Borough for the ten-foot vacation the borough mistakenly carried on its tax rolls after the city approved the Schmidts' request for vacation in 1989. Ogar satisfied the survey, replat, and payment requirements in March 1999. But the overhang and fuel tank remain. When Ogar removes those improvements, the city will obtain the new plat from the surveyor for signing and recording.

In her original 1998 complaint, Ogar sought specific performance from Larry Schmidt to purchase sufficient land from the city to unencumber the property and meet all city zoning ordinances. She alternatively sought damages to compensate for that purchase and for the difference between the value of the property Ogar believed she was purchasing and its actual value when she

1. Ogar claims she was denied the requested thirty-foot vacation in retaliation for her previous opposition to a different permit petition. The reason why the city did not grant Ogar her entire request is irrelevant to this appeal, however, because Ogar has abandoned her discrimination claims against the city.

purchased it. Ogar amended the complaint to join the city in January 1999.

Her amended complaint alleged that the city was negligent in failing to correct the encroachment because the city failed to inspect the property in conjunction with Permit No. 90–25. Ogar asked the superior court to equitably estop the city from requiring her to remove the overhang and the fuel tank and "from trying to collect any money from [her]." Ogar also sought an order to vacate enough of the right-of-way to bring her garage into compliance with zoning and setback requirements.

The city moved to dismiss the claims under Alaska Civil Rule 12(b)(6) and alternatively sought summary judgment under Alaska Civil Rule 56(b). The superior court granted the city's summary judgment motion, holding that the city's failure to assert its rights to the right-of-way was not sufficient to establish elements necessary for equitable estoppel. The superior court awarded the city attorney's fees of $3,573.50, twenty percent of the city's reasonable, actual fees.

Ogar appeals the grant of summary judgment and the award of attorney's fees.

## III. DISCUSSION

### A. Standard of Review

■ We review a grant of summary judgment de novo.[2] Because the conclusion that equitable estoppel does not apply is a question of law, we review that conclusion de novo.[3] We review an award of attorney's fees for abuse of discretion, reversing only if the award was "arbitrary, capricious, manifestly unreasonable, or ... stem[med] from an improper motive."[4]

### B. The Trial Court Did Not Err in Granting Summary Judgment to the City on the Issue of Equitable Estoppel.

■ A party claiming equitable estoppel must prove four necessary elements: "(1) assertion of a position by conduct or word, (2) reasonable reliance thereon, ... (3) resulting prejudice, ... [and (4)] the estoppel will be enforced only to the extent that justice so requires."[5]

■ We hold that the city made no assertions of position to Ogar or her predecessors sufficient to satisfy the first element. Ogar argued that the combination of granting the vacation to the Schmidts—although the vacation was ultimately incomplete—and issuing the building permit for the new garage fulfilled the first element for equitable estoppel. The superior court concluded that the city did not make any positive assertions. It held:

> [t]he alleged "acts" by the City do not constitute acts on which either the Schmidts or the Ogars could have relied regarding the encroachment at issue here and do not support finding exceptional circumstances in which estoppel should be applied.... The original building permit did not authorize either an encroachment or the additional 10 foot overhang.

The superior court relied on *State v. Simpson*,[6] in which we considered whether the state could force the landowner off property that he and his predecessors believed belonged to him. The landowner made improvements that cost $28,000.[7] The superior court in *Simpson* found that the combination of forty years of nonuse and eight affirmative acts by the government allowed the landowner reasonably to believe that he owned the land.[8] The superior court found it inequitable to force the landowner off the land and

---

**2.** *Kollodge v. State*, 757 P.2d 1028, 1032 (Alaska 1988).

**3.** *Hubbard v. Hubbard*, 44 P.3d 153, 155 (Alaska 2002) (citation omitted).

**4.** *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 766–67 (Alaska 1992) (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

**5.** *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984).

**6.** 397 P.2d 288 (Alaska 1964).

**7.** *Id.* at 289.

**8.** *Id.*

applied the doctrine of equitable estoppel against the state.[9]

We reversed, holding that "[t]he failure of municipal and other governmental officers to affirmatively assert governmental rights where the dedicated but as yet unused street was being occupied by appellee and his predecessors cannot serve as a basis for equitable estoppel."[10] We held further that "tacit acquiescence by municipal officers could not serve as a basis for equitable estoppel."[11] We also held that "in the absence of a contrary statute title to streets created by dedication is held by the municipality in trust for the public and not in a proprietary capacity."[12]

Ogar relies, as she did in the superior court, on *Municipality of Anchorage v. Schneider*.[13] In *Schneider* we upheld the superior court's application of equitable estoppel against the municipality. We held that the landowners reasonably relied on a settlement agreement with the municipality allowing them to construct three residential units on their lot to comply with then-existing zoning ordinances. After the municipality amended the zoning ordinances, it attempted to enforce the amended ordinances against the landowners. We held that "[t]he settlement agreement and the resulting permit gave the Schneiders clear authorization to take the steps they did."[14] We held that the public prejudice that would result from estopping the municipality was limited and noted that our decision was influenced by the "strong public policy in favor of settlement agreements."[15]

We agree with the superior court that this case is indistinguishable from *Simpson*. As the superior court said, "the failure of the government to assert its rights as to a dedicated, but as yet unused right-of-way, could not serve as the basis for equitable estoppel. . . . Ms. Ogar's claim that the City negligently failed to prevent or cure the encroach-ment fails under equitable estoppel." It is undisputed that the city made no affirmative assertions about building in or next to the right-of-way after it granted the 1990 building permit; Ogar's equitable estoppel claim therefore rests on the city's failure to detect and abate the incursions into the right-of-way and into the setback minima. Such failures are squarely within *Simpson*, not *Schneider*. We hold as a matter of law that the city made no assertions that would equitably estop it from enforcing its requirements against Ogar.

Because Ogar failed to establish the first of the four necessary elements of equitable estoppel, it is unnecessary to decide whether she established any of the remaining three. We hold that there is no genuine issue of material fact and that, as a matter of law, the city is not equitably estopped from requiring Ogar to remove the overhang and the fuel tank. We affirm the superior court's grant of summary judgment.

## C. It Was Not an Abuse of Discretion To Award the City $3,573.50 in Attorney's Fees.

The superior court found that the city had actually and reasonably incurred attorney's fees of $17,867.50, and awarded the city Alaska Civil Rule 82(b)(2) prevailing party attorney's fees of $3,573.50; this was twenty percent of the city's incurred fees. Ogar argues that the city's attorneys' hours were excessive, asserting that "[t]he amount of time billed when compared to the amount of work product produced appears incompatible and unreasonable." The city relies on *Abbott v. Kodiak Island Borough Assembly*[16] to support its assertion that Ogar has not met her burden of showing a clear abuse of discretion by the trial court in awarding what it did. We agree with the city's assertion. Ogar has never explained why the hours reflected in

**9.** *Id.*

**10.** *Id.* at 291.

**11.** *Id.* at 290 (citing *City of Molalla v. Coover*, 192 Or. 233, 235 P.2d 142, 150 (1951)).

**12.** *Id.* at 291 (citing *Town of Chouteau v. Blankenship*, 194 Okla. 401, 152 P.2d 379 (1944)).

**13.** 685 P.2d 94 (Alaska 1984).

**14.** *Id.* at 98.

**15.** *Id.*

**16.** 899 P.2d 922, 925 (Alaska 1995).

the bills the city filed with the court were unnecessary or unreasonable.

We affirm the superior court's award of attorney's fees because there was no abuse of discretion and there is no indication the superior court failed to give appropriate scrutiny to the timesheets counsel submitted. The attorneys' bills were admissible evidence supporting a finding concerning the full amount of the fees incurred.[17] "[A]warding attorney's fees to the prevailing party as part of the costs of an action is committed by rule to the broad discretion of the trial court"[18] and

$3,573.50 is neither unduly high[19] nor manifestly unreasonable.[20]

## IV. CONCLUSION

For these reasons, we AFFIRM in all respects.

---

17. *See Coleman v. Coleman,* 968 P.2d 570, 574 (Alaska 1998).

18. *Dale v. Greater Anchorage Area Borough,* 439 P.2d 790, 793 (Alaska 1968) (citations omitted).

19. *Davidsen v. Kirkland,* 362 P.2d 1068, 1070 (Alaska 1961).

20. *Palfy v. Rice,* 473 P.2d 606, 613–14 (Alaska 1970); *see also McGlothlin v. Municipality of Anchorage,* 991 P.2d 1273, 1277 (Alaska 1999) ("[A]wards made pursuant to the schedule in Alaska Civil Rule 82(b) are presumptively correct.").