**Craig SCHWEITZER, Appellant,**

v.

**SALAMATOF AIR PARK SUBDIVISION OWNERS, INC. and Estate of Dennis J. Luy, Appellees.**

No. S–13350.

Supreme Court of Alaska.

June 22, 2012.

Craig Schweitzer, pro se, Kenai, Appellant.

Robert J. Molloy and Kristine A. Schmidt, Molloy Schmidt LLC, Kenai, for Appellee Salamatof Air Park Subdivision Owners, Inc.

Joseph L. Kashi, Soldotna, for Appellee Estate of Dennis Luy.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

PER CURIAM.

## I.  INTRODUCTION

Purchasers of a lot in a newly formed airpark subdivision prepared and properly executed an easement agreement granting them access to the subdivision's aviation fa-

cilities. The purchasers later claimed the easement agreement gave them a priority right to use the subdivision's common areas, distinct from use rights granted to other lot owners. The subdivision's homeowner's association disputed this claim.

The superior court ruled that the easement agreement did not grant the purchasers the right to exclude other lot owners from common areas. The court also issued a variety of orders on related issues, declaring the subdivision a common interest community and quieting title to its common use areas as superior to the easement agreement. The court awarded attorney's fees against the purchasers.

One of the purchasers appealed but subsequent events rendered all issues except the attorney's fees decision moot. Because we agree with the superior court on the main issue in the litigation, namely that the easement agreement did not grant priority rights to the purchasers, we affirm the superior court's award of attorney's fees against the purchasers.

## II. FACTS AND PROCEEDINGS

### A. Facts

In November 1998 Dennis J. Luy recorded a plat creating Salamatof Air Park Subdivision, a roughly 88–acre subdivision on Salamatof Lake. The subdivision was comprised of Lots 1–17, Tracts A, B, and C, several roadways, and a nearly 80–acre remainder.

In February 1999 Luy entered into an earnest money agreement with Michael and Dorinda Wilhelm for Lot 15. The Wilhelms' daughter, Melinda, and her husband, Craig Schweitzer (collectively the Schweitzers), later became involved in the purchase of Lot 15. In March Craig provided Luy purchase documents, including the Easement Agreement at issue in this case and a separate right-of-way easement. In April Luy signed and recorded the Easement Agreement and the right-of-way easement Craig had provided. It appears Craig drafted the Easement Agreement and that Luy did not provide other lot purchasers easement agreements or right-of-way easements. Luy also signed and recorded Covenants, Conditions, and Restrictions (CCRs) covering the subdivision.

During the summers of 1999 and 2000 Craig worked to widen a channel to Salamatof Lake and develop a float plane basin. In September 2000 Luy died. Craig and another lot owner filed suit against Luy's estate (Estate) in July 2001 seeking damages "to reimburse them for their previous work on the float plane access and to pay for further necessary work on float plane access." The parties entered into a settlement agreement in July 2002. Under the agreement, Lot 14 was conveyed to Craig; he and the other lot owner were also permitted to construct additional float plane basins and improvements on Tract A at their own expense for their non-exclusive use. In November 2004 the Estate recorded a new Salamatof Air Park Subdivision plat dividing Tract A into Tract A–1 and Lot 18.

In October 2004 the Salamatof Air Park Subdivision Owners, Inc. (Association) sent a demand letter to the Estate, requesting the Estate convey Tract A–1 to the Association. In November 2004 the Association released claims against the Estate conditioned on receiving "common property devoted to aviation related facilities including the runway, float basin, and parking area identified ... as Tract A–1." The Estate conveyed Tract A–1 to the Association the same day.

A conflict later developed between Craig and other lot owners over use of the Tract A–1 common areas. Craig characterized the Association as engaging in "a campaign to hinder [his] activities" in the area; several lot owners testified before the superior court that Craig verbally and physically threatened them regarding their use of the common areas. In April 2005 Craig posted a "Safety Notice to Salamatof Air Park Subdivision Homeowners," stating that he was expanding his commercial float plane operation as authorized by the Easement Agreement and requesting that homeowners stay clear of construction areas during flight strip repairs

and modifications. The Association sent a letter suggesting that Craig misunderstood the Easement Agreement, which "recites what are known as the Common Areas ... available for use by all owners of property equally and nonexclusively" and "does not provide any special rights to [Craig]." Craig failed to respond and the Association reiterated the message in two more letters.

## B. Proceedings

### 1. Pre-trial proceedings

Craig filed a complaint for declaratory judgment against the Association in June 2005. Craig sought judgment establishing, among other things, that the Easement Agreement gave him a perpetual right of use to all common areas with priority over the Association and all other users. Craig also claimed authority to perform any acts necessary to facilitate his use and enjoyment of his easement and to exclude other users from facilities constructed pursuant to the Easement Agreement. The Association filed an answer with counterclaims alleging that the subdivision was a "common interest community" subject to AS 34.08 governing easement rights.[1] The Association sought judgment quieting title to Tract A–1 and expunging Craig's Easement Agreement, right-of-way easement, settlement stipulation, and lis pendens; it also sought injunctive relief and damages. The Association also filed third party complaints against Melinda and the Estate.

In March 2006 the Schweitzers moved for summary judgment on the Association's claim that the subdivision was a common interest community subject to AS 34.08. The Association, joined by the Estate, opposed the motion and cross-moved for partial summary judgment establishing that the 1998 plat and original CCRs created a de jure or de facto common interest community. Following oral argument on the motions, Superior Court Judge Harold M. Brown granted

the Schweitzers' motion and denied the Association and Estate's cross-motion.

In July and August 2006 the Association filed several additional motions for partial summary judgment. Judge Brown ruled that the Easement Agreement could not grant priority rights in publicly dedicated streets and that Melinda had waived all claims for money damages; he also expunged Craig's lis pendens on Tract A.

Judge Brown further ruled that the Easement Agreement did not grant Craig an appurtenant easement in Tract A or other areas. Judge Brown reasoned that because the Easement Agreement was executed before the deed conveying the lot to the Schweitzers was recorded, the Schweitzers had no interest in the dominant estate when the Easement Agreement became effective. Although the Easement Agreement's stated effective date was March 24, 1999, the warranty deed was executed April 6, 1999. Judge Brown noted that: (1) the deed expressly stated it was subject to all CCRs; (2) the CCRs were executed the same day as the deed; and (3) the CCRs were recorded before the deed. Judge Brown concluded as a matter of law that the Easement Agreement "could not be effective until the statutory warranty deed was executed," and that if the CCRs and Easement Agreement conflict, the CCRs control.

Judge Brown retired and the case was reassigned to Superior Court Judge Anna Moran. Judge Moran subsequently ruled that the Easement Agreement did not grant Craig priority rights in Tract A–1 or the lake frontage over other users of the common areas. Judge Moran also ruled that the Easement Agreement did not grant Craig sole discretion for construction of docks or maintenance of the runways, taxiways, and float plane areas.

The case was then reassigned to Superior Court Judge Carl Bauman. Judge Bauman indicated at a status conference that he

---

1. AS 34.08.990(7) defines "common interest community" as " real estate with respect to which a person, by virtue of ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improvement of other real estate described in a declaration."

would not override Judge Brown's or Judge Moran's summary judgment rulings. In March 2008 Craig filed a motion in limine regarding the scope of the upcoming bench trial, seeking to bar any argument that the subdivision was a de jure or de facto common interest community. Craig argued that Judge Brown's summary judgment ruling on the common interest community issue stood as the law of the case and should not be revisited. The Association opposed the motion. Judge Bauman appears to have orally declined to grant the motion in limine. (Due to the absence of a complete transcript we are unable to definitively determine Judge Bauman's ruling on the motion.) Judge Bauman then granted a stipulation for dismissal with prejudice settling the Association's third-party complaint against the Estate.

### 2. Trial and decision

After a five-day bench trial Judge Bauman issued a memorandum decision. Judge Bauman applied contract construction principles to determine the Easement Agreement conveyed "*non*-exclusive access and use rights to the common areas," no different from the rights the CCRs conveyed to all lot owners. Judge Bauman also determined the subdivision was a de facto and implied common interest community. The court ordered that: (1) Craig remove obstructions he had placed on the subdivision common areas; (2) the Association was the operator of the subdivision airport; (3) the Association meet to develop and propose to its members rules for the use of the subdivision common interest areas; (4) the Association be considered to have fee simple title to Tract A–1, with the Easement Agreement providing Craig no special rights; (5) the Association be awarded approximately $4,700 in money damages to compensate the Association for the cost of removing gravel Craig left on the common runway; and (6) specific areas of the subdivision had been irrevocably dedicated to the public when the original plat was recorded in 1998.

In October 2008 Judge Bauman entered findings of fact, conclusions of law, and orders. The orders reiterated several determinations from the March 2008 decision, and concluded the Association was entitled to a judgment quieting title in Tract A–1. The superior court determined the Association was the prevailing party and awarded it $60,000 in attorney's fees and $8,250 in costs against the Schweitzers jointly.

### 3. Appeal and related motions

Melinda initiated this appeal in November 2008, and Craig later joined it. Because only Craig filed an appellant's brief, we dismissed Melinda's appeal.

When this appeal was filed the Schweitzers jointly owned Lot 15 and Craig owned Lot 14. In 2009 a mortgage holder foreclosed on both lots. After this appeal was filed the Association's judgments against the Schweitzers for damages, fees, and costs were paid by Don Reesor on behalf of Airflow Leasing, LLC.[2]

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor."[3] We will affirm a grant of summary judgment "when there are no genuine issues

---

**2.** Airflow Leasing, LLC claimed ownership of a partially reconstructed aircraft and aircraft parts the Association had seized to satisfy its judgment against Craig. The seized property was found to be Craig's (despite Craig's assertion that he had sold the aircraft in question to Airflow). The superior court ordered the seized property released to Airflow if it unconditionally paid $85,000 to the Association and then "[took] possession of the seized property with the responsi-

bilities of a trustee in bailment pending an agreement among all of the potential claimants to the seized property or a court order [addressing] distribution of the seized property."

**3.** *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002)).

of material fact and the moving party is entitled to judgment as a matter of law." [4] "We resolve issues of standing and mootness using our independent judgment because they are questions of law involving matters of judicial policy." [5] We review factual findings for clear error.[6]

▅▅▅ The superior court's attorney's fees awards are reviewed for abuse of discretion.[7] We will conclude there has been an abuse of discretion if, after reviewing the whole record, we are left with a definite and firm conviction that the superior court erred in its ruling.[8]

## IV. DISCUSSION

### A. Craig's Appeal Is Moot, But We Nonetheless Consider The Main Issue To Resolve The Attorney's Fees Question.

#### 1. Craig's appeal is moot.

▅▅ The Association argues that the foreclosures of Lots 14 and 15 negated any rights Craig had in the Easement Agreement, rendering his appeal moot and depriving him of standing to obtain relief. Craig responds that he "retains a vested interest in the property rights issues in this matter" because a standing order in earlier litigation directed the Estate to retain title to Lot 16 as security for any monies owed Craig. We find Craig's argument unconvincing.

▅▅ "A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails." [9] The issues on appeal here arise almost entirely from rights under the Easement Agreement signed when Craig purchased Lot 15. The parties agree the easement benefitting Lot 15 is appurtenant and therefore runs with the land and passes to the new owner upon transfer of the property, in the absence of contrary intent.[10] Lot 15's transfer following foreclosure left Craig without any rights under the Easement Agreement. Even assuming a potential stake in Lot 16, this general interest in the "property rights issues" surrounding the subdivision is not sufficient to reanimate the specific issues raised in this appeal. Craig's claim is moot.

#### 2. We make an exception to the mootness doctrine where, as here, appellate review may change the status of the prevailing party for attorney's fees purposes.

We will "hear an otherwise moot case 'to determine who is the prevailing party for purposes of awarding attorneys' fees.'" [11] The Association acknowledges this exception but argues the prevailing party is unlikely to change. The Association contends Craig did not challenge every claim-dispositive ruling the superior court issued and even if Craig won every appeal point, the case would have to be remanded to determine the prevailing party. The Association then argues the superior court would have to dismiss Craig's claim on remand because he is no longer a subdivision lot owner and he therefore lacks

4.  *Id.* (citing *Spindle,* 61 P.3d at 436).

5.  *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks,* 48 P.3d 1165, 1167 (Alaska 2002) (citing *Kleven v. Yukon–Koyukuk Sch. Dist.,* 853 P.2d 518, 525 n. 13 (Alaska 1993)).

6.  *In re Protective Proceedings of W.A.,* 193 P.3d 743, 748 (Alaska 2008).

7.  *Balough v. Fairbanks N. Star Borough,* 995 P.2d 245, 254 (Alaska 2000) (citing *Davila v. Davila,* 908 P.2d 1027, 1031 (Alaska 1995)).

8.  *Id.* (citing *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994)).

9.  *Fairbanks Fire Fighters,* 48 P.3d at 1167 (citing *Gerstein v. Axtell,* 960 P.2d 599, 601 (Alaska 1998)).

10.  RESTATEMENT (THIRD) OF PROP.. SERVITUDES § 5.1 cmt. b (2000).

11.  *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.,* 227 P.3d 457, 461 (Alaska 2010) (quoting *Lamoureaux v. Totem Ocean Trailer Express, Inc.,* 651 P.2d 839, 840 n. 1 (Alaska 1982)).

standing to pursue his claims. Craig responds that he remains liable to Reesor and Airflow for the $85,000 the Association was paid and that this appeal is his only legal remedy regarding that debt.

■ We agree with Craig—he may no longer have standing with regard to the underlying issues on appeal, but the principle behind the mootness exception for attorney's fees is to recognize the continued interest in an otherwise moot claim based on the party's liability for attorney's fees. If a party in Craig's position lacked standing on remand, the mootness exception would be meaningless.

We have held that "[t]he prevailing party [in an action] is . . . the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.'"[12] To determine the prevailing party and resolve the attorney's fees issue we need only review the superior court's holding on what we determine is the "main issue." In this case, the main issue is Craig's claim to priority rights under the Easement Agreement.

## B. Craig Is Not Entitled To Priority Rights Under The Easement Agreement.

### 1. The Easement Agreement did not give Craig priority rights over other lot owners.

■ In his original complaint, Craig sought a judgment declaring his right in the common areas had "priority over . . . all other users of the Common Areas." The superior court's order granting the Association's partial summary judgment motion ruled the Easement Agreement did not grant Craig any special or priority rights in the common areas.

Craig argues the Easement Agreement's plain language unambiguously grants him special rights to the common areas. Craig bases this contention on the Easement Agreement granting him "unrestricted access" to the common areas, and the lack of such a provision pertaining to other lot owners. Craig contends the superior court never found the Easement Agreement ambiguous and should have interpreted it based on its plain language. The Association counters the superior court correctly interpreted the Easement Agreement as not giving Craig exclusive or superior rights to common areas or rights-of-way. We agree with the superior court's conclusions about the Easement Agreement's intended meaning.

In *Dias v. State, Department of Transportation & Public Facilities*[13] we reiterated a three-step approach to the interpretation of an easement agreement. First, the court "look[s] to the four corners of the document to see if it unambiguously presents the parties' intent."[14] "[I]f the deed, taken as a whole, is only open to one reasonable interpretation" the interpreting court's analysis "ends here."[15] Whether a deed is ambiguous is a question of law that is reviewed de novo.[16] If the court finds the deed ambiguous, it next determines the parties' intent by considering "the facts and circumstances surrounding the conveyance."[17] "If the parties' intent is still not discernable after examining extrinsic evidence, then we resort to rules of construction."[18]

Looking at the four corners of the Easement Agreement we note the absence of any explicit grant of exclusive rights, and that use of the term "common areas" necessarily

12. *Progressive Corp. v. Peter ex rel. Peter,* 195 P.3d 1083, 1092 (Alaska 2008) (quoting *Hillman v. Nationwide Mut. Fire Ins. Co.,* 855 P.2d 1321, 1326 (Alaska 1993)).

13. 240 P.3d 272 (Alaska 2010).

14. *Id.* at 274 (quoting *Estate of Smith v. Spinelli,* 216 P.3d 524, 529 (Alaska 2009)).

15. *Id.* (citing *Estate of Smith,* 216 P.3d at 529).

16. *Id.* (citing *Estate of Smith,* 216 P.3d at 529).

17. *Id.* (quoting *Estate of Smith,* 216 P.3d at 529).

18. *Id.* (citing *Estate of Smith,* 216 P.3d at 529).

conveys common, not exclusive, access to those areas.[19] The Easement Agreement's plain language leads us to agree with the superior court that it was not intended to give Craig special, "super priority" rights.

Even if the Easement Agreement were ambiguous, the extrinsic evidence does not indicate an intent to grant Craig priority rights. Among the extrinsic evidence the superior court considered were several settlement provisions between Craig and the Estate giving Craig "non-exclusive" use of float plane basins. The court also discussed the reasonable expectations of the parties to the Easement Agreement, concluding "there was extensive evidence that ... Luy intended to create an air park in which the lot owners would enjoy access and use of the common areas." According to the superior court, this conclusion was supported by testimony from Luy's widow, other lot purchasers, and the escrow agent. Craig argues that he and Melinda were not interested in purchasing Luy's property "unless they were assured that their ... investment would be protected from outside interference." The Association correctly observes that Craig describes only *his* intent in entering into the Easement Agreement and not Luy's development plans for the entire subdivision. The superior court relied on the circumstances surrounding the transaction, particularly the undisputed fact that Luy was developing an entire subdivision, called an "air park," and hoped to sell numerous lots to other buyers. The superior court asked a reasonable rhetorical question: "Why would the owner of an air park, who was in negotiations with other interested lot buyers, give *exclusive* rights to the airstrip and lake frontage to the first buyer?"

We therefore affirm the superior court's conclusion that the Easement Agreement was not intended to give Craig special priority rights.

## 2. The Easement Agreement did not give Craig priority rights to areas of the subdivision already dedicated.

■ Luy expressly dedicated all rights-of-way to public use in the original plat. Luy later entered into the Easement Agreement with the Schweitzers, granting them a perpetual easement in certain "common areas" including streets dedicated to public use by the plat. The superior court held that after recording the plat, Luy had no legal right to convey exclusive use of previously dedicated rights-of-way.

Craig paraphrases Black's Law Dictionary's definition of "dedication"[20] to argue "the owner of property who dedicates a portion thereof for public use ... reserves to himself all rights that are not inconsistent with the public's right of use granted by the dedication." Craig claims Luy granted the public only a "privilege of use" in the rights-of-way, rather than an irrevocable interest, and this privilege did not conflict with Craig's claim to priority rights. The Association disputes this theory, arguing that the general definition of "dedication" cited by Craig is less relevant than Black's Law Dictionary's specific definition of "statutory dedication": a property owner files a plat "which marks or notes ... portions of premises as donated or granted to the public; it results in conveyance of dedicated portions in *fee simple* to the public."[21] The Association argues that based on this definition—and on this court's adoption of the "title" doctrine of dedications[22]—Luy had no title in the rights-of-way areas after dedicating them to the public, and therefore no ability to grant Craig special rights through the Easement Agreement. We agree with the Association.

19. *See* Black's Law Dictionary 311 (9th ed. 2009) (defining "common area" as "[a]n area owned and used in common by the residents of a condominium, subdivision, or planned-unit development").

20. Black's Law Dictionary 412 (6th ed. 1990).

21. Black's Law Dictionary 413 (6th ed. 1990) (emphasis added).

22. *See State v. Simpson*, 397 P.2d 288, 291 (Alaska 1964).

An interest in land is dedicated when the owner "transfers to the public a privilege of use of such interest for a public purpose." [23] In *State v. Simpson,* we held that title transfers to the public trust upon statutory dedication of streets.[24] Here Luy dedicated rights-of-way in the subdivision when he recorded the original plat in 1998. From that point on, he no longer had fee simple ownership in the subdivision rights-of-way and could not have granted Craig or anyone else an easement. It is undisputed that the Easement Agreement was executed after the plat was recorded. Because Luy did not have the ability to convey priority rights to Craig, we agree with the superior court's conclusion that the Easement Agreement could not have provided Craig with priority rights in the subdivision's rights-of-way.

### C. We Affirm The Superior Court's Attorney's Fees Award.

Because Craig did not prevail on the main issue in this case—his claim of priority rights under the Easement Agreement—we affirm

the superior court's ruling that the Association was the prevailing party for purposes of attorney's fees. We do not reach Craig's remaining claims of error by the superior court because they do not go to the main issue in this case.

## V. CONCLUSION

We AFFIRM the superior court's judgment as noted.

CHRISTEN, Justice, not participating.

---

**23.** *Swift v. Kniffen,* 706 P.2d 296, 300–01 (Alaska 1985) (quoting *Hamerly v. Denton,* 359 P.2d 121 (Alaska 1961)).

**24.** *Simpson,* 397 P.2d at 291 ("[T]itle to streets created by dedication is held by the municipality in trust for the public.").