*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CRAIG SCHWEITZER, AIRFLOW LEASING, LLC, and DON REESOR, | ) ) ) | Supreme Court No. S-14170 |
| Appellants, | ) ) | |
| v. | ) ) | Superior Court No. 3KN-05-00407CI |
| | ) | O P I N I O N |
| SALAMATOF AIR PARK SUBDIVISION OWNERS, INC., | ) ) ) | |
| Appellee. | ) ) ) | No. 6825 - September 13, 2013 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Craig Schweitzer, pro se, Kenai, Appellant. William Walton, Walton, Theiler, & Winegarden, LLC, Kenai, for Appellant Airflow Leasing, LLC. Don Reesor, pro se, Las Vegas, Nevada, Appellant. Robert J. Molloy and Kristine A. Schmidt, Molloy Schmidt LLC, Kenai, for Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A judgment debtor challenges the superior court's denial of an Alaska Civil Rule 60(b) motion to set aside an order permitting the sale of an airplane seized to

execute on the judgment against him.  At the time of seizure, the airplane was in the process of being reconstructed and did not have certain identifying information attached to it.  Third parties claimed an interest in the seized airplane.  After an evidentiary hearing the superior court determined that the judgment debtor had an interest in the airplane and permitted its sale.  But at that point the underlying judgment was paid by one of the third parties, and the execution sale did not occur.  The judgment debtor, joined by the third parties, filed a Rule 60(b) motion to set aside the order regarding ownership of the airplane.  The superior court denied the Rule 60(b) motion and awarded attorney's fees to the judgment creditor and against the judgment debtor and the third-party claimants.

Appealing the denial of the Rule 60(b) motion, the judgment debtor argues that the superior court's ownership decision is void for lack of subject matter jurisdiction because federal law  grants the Federal Aviation Administration sole power to "identify" aircraft.  He also argues that the superior court improperly modified statutory sale procedures, erred by not concluding that newly discovered evidence supported relief from the ownership decision under Rule 60(b)(2), and erred by awarding execution-related attorney's fees to the judgment creditor.  The third parties join in the judgment debtor's appeal.  For the reasons discussed below, we affirm the superior court's decisions.

## II.    FACTS AND PROCEEDINGS

This appeal arises out of execution of judgment proceedings.  In January 2009 the superior court entered a money judgment against Craig Schweitzer in favor of Salamatof Air Park Subdivision Owners, Inc. (the Association).[1]  The Association

---

[1]    *See Schweitzer v. Salamatof Air Park Subdivision Owners, Inc.*, 278 P.3d 1267, 1269-71 (Alaska 2012) (describing underlying litigation).

conducted a judgment debtor examination to determine whether Schweitzer had assets available to satisfy the judgment. Schweitzer testified that certain Otter[2] airplane parts in his airplane hangar belonged to Airflow Leasing, LLC, but that he did not know the Otter's serial or N number[3] or who owned Airflow Leasing.

The Association obtained a writ of execution and a process server seized a partially rebuilt Otter airplane and some parts from Schweitzer's hangar. Schweitzer filed a claim of exemptions asserting that he had no ownership interest in the airplane, which he said was "De Havilland DHC-3 Otter N26DE, Serial #26." Attached to the claim of exemptions was an affidavit, made pursuant to AS 09.35.130[4] and executed by Don Reesor on behalf of Airflow Leasing; Reesor claimed that the seized airplane was Otter N26DE and was owned by Airflow Leasing. Airflow Leasing later requested an evidentiary hearing on its ownership interest in the seized property.

---

[2]  "Otter" refers to a de Havilland DHC-3 aircraft, built in Canada in the 1950s and 1960s.

[3]  An "N number" is the Federal Aviation Administration's (FAA) registration number for United States registered aircraft. *See* 14 C.F.R. §§ 45.23(a), 47.15 (2012).

[4]  AS 09.35.130 provides:

> If property levied upon is claimed by a third person as the person's property by an affidavit of title to the property, or right to the possession of the property and the ground of the title or right, stating the value of the property, and delivered to the person making the levy, that person shall release the property. However, the plaintiff, on demand of the person, may give the person an undertaking executed by two sufficient sureties in a sum equal to double the value of the property levied upon. The undertaking shall be in favor of and shall indemnify the third person against loss, liability, damages, and costs, by reason of the taking or sale of the property by the person.

After holding the requested evidentiary hearing, the superior court issued extensive written findings of fact and conclusions of law about the seized property. The court found that the Association had seized a partially reconstructed single-engine Otter with "no aircraft data plate, no airframe data plate, and no log books."[5] It found that the seized Otter was reconstructed using parts from two different airplanes, Otter 398 and Otter 26.[6] It found that Schweitzer was the owner of Otter 398 and Airflow Leasing was the owner of Otter 26. The court found that Otter 398 previously was outfitted with a turbine engine and an up-gross STOL kit.[7] The court found that Otter 26 previously was outfitted with a piston engine and without an up-gross STOL kit. The court found that the seized airplane was equipped with a mount for a turbine engine and an up-gross STOL kit. The court found that the seized Otter was "the partially re-built Otter 398 to which the tail section from Otter 26 was affixed."

The superior court concluded that Airflow Leasing had the burden of proving it owned the airplane because it did not have possession of the Otter at the time of seizure,[8] and that Airflow Leasing had failed to meet its burden. The court concluded

---

[5] Federal law requires an airplane manufacturer to attach to an aircraft a fireproof identification plate containing certain information and restricts removal of this identification plate. 14 C.F.R. §§ 45.11-.13 (2012). According to testimony at the evidentiary hearing, an airplane's log books contain information about both flight and repair history.

[6] 398 and 26 are the serial numbers of the respective aircraft.

[7] An "up-gross" modification increases the aircraft's maximum gross weight capacity. A "STOL" (short takeoff and landing) kit is designed to increase the aircraft's short field takeoff and landing capabilities. Both require physical modifications to the aircraft.

[8] *See Keltner v. Curtis*, 695 P.2d 1076, 1080 (Alaska 1985) (holding that when third party claims property in judgment debtor's possession, third party has burden
(continued...)

that the Otter could be sold to satisfy the judgment against Schweitzer. Modifying statutory execution procedures, the court then: (1) delayed the sale so the parties could find the airplane data plate and log books for Otter 398; (2) required the process server to re-advertise the new sale date "in a manner that is reasonably likely to reach interested wrecked Otter buyers globally"; and (3) ordered that any excess proceeds be paid into the court registry, rather than to Schweitzer, to give others who might claim an ownership interest in the airplane an opportunity to be heard.

In June 2010 Reesor paid the Association $85,000 to satisfy the underlying judgment against Schweitzer and assumed possession of the seized airplane and parts. No execution sale was held.

After the superior court's decision, the Association asked the court to enter a partial final judgment on the ownership issue and to award it attorney's fees as the prevailing party in the contested evidentiary hearing. The Association sought fees jointly and severally against Schweitzer, Reesor, and Airflow Leasing, relying on AS 09.35.130 and AS 09.38.080(e) as well as Rules 82 and 89. Airflow Leasing opposed and asked the court to award it attorney's fees as the prevailing party because the court found that Airflow Leasing was the owner of Otter 26. Airflow Leasing argued in the alternative that because the proceeding was a post-judgment collection action, no one was entitled to attorney's fees.

In September 2010 Schweitzer filed a Rule 60(b) motion for relief from the superior court's ownership decision, along with a letter from the FAA giving Reesor permission to install a replacement identification plate on Otter 26. Schweitzer argued, under Rule 60(b)(4), that the ownership decision was void because federal law

---

**8** (...continued)
of proving ownership).

preempted the court's jurisdiction to "identify" the seized aircraft. He also argued, under Rule 60(b)(2), that new evidence, primarily the FAA letter, also supported setting aside the ownership decision. Airflow Leasing joined in Schweitzer's Rule 60(b) motion. Schweitzer also opposed the Association's motion for attorney's fees resulting from the evidentiary hearing related to ownership, arguing that, because the judgment was void, the Association could not be the prevailing party.

The superior court denied the Rule 60(b) motion in December 2010 and awarded attorney's fees to the Association against Schweitzer relating only to the Rule 60(b) proceedings. The superior court awarded Rule 82 enhanced attorney's fees to the Association against Reesor and Airflow Leasing for work related to the evidentiary hearing and Rule 82 non-enhanced attorney's fees for the time period May through November 2010. On December 29, 2010 the court entered a partial final judgment on the seized property's ownership.

Schweitzer appeals the denial of the Rule 60(b) motion, the court's modification of the sale procedure, and the attorney's fees award. Reesor and Airflow Leasing join in Schweitzer's appeal and rely on Schweitzer's briefing.

## III. STANDARD OF REVIEW

Typically, the superior "court's ruling on an Alaska Civil Rule 60(b) motion is reviewed for abuse of discretion; it will not be disturbed unless we are left with 'the definite and firm conviction on the whole record that the judge ha[s] made a mistake.' "[9] But "no question of the [superior] court's discretion is presented by a Rule 60(b)(4) motion because the validity of a judgment is strictly a question of law."[10] Thus

---

[9] *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011) (alteration in original) (quoting *Thomas v. Thomas*, 581 P.2d 678, 679 (Alaska 1978)).

[10] *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974).

a Rule 60(b)(4) motion alleging a lack of subject matter jurisdiction is reviewed de novo.[11]

"We review a trial court's prevailing party determination for abuse of discretion, which we find only if the determination is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[12] We review the superior court's interpretation of court rules de novo.[13] Interpretation of a statute is a question of law that we review using our independent judgment.[14] We "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[15]

## IV. DISCUSSION

### A. The Superior Court Had Subject Matter Jurisdiction And Correctly Denied The Rule 60(b)(4) Motion.

Schweitzer, joined by Reesor and Airflow Leasing, argues that the superior court erred in denying his Rule 60(b)(4) motion because the ownership judgment is void for lack of subject matter jurisdiction.[16] Conceding that the superior court had jurisdiction to determine ownership of the seized airplane, he nonetheless claims that

---

[11] *See Barlow v. Thompson*, 221 P.3d 998, 1001 (Alaska 2009) ("Whether a superior court has jurisdiction is a question of law that we review de novo." (citing *Atkins v. Vigil*, 59 P.3d 255, 256 (Alaska 2002))).

[12] *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 727 (Alaska 2012) (quoting *Taylor v. Moutrie–Pelham*, 246 P.3d 927, 928-29 (Alaska 2011)).

[13] *Enders v. Parker*, 66 P.3d 11, 13 (Alaska 2003).

[14] *Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1286 (Alaska 2010).

[15] *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979).

[16] Rule 60(b)(4) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void . . . ."

"[w]hen the trial court moved beyond determination of ownership and into the arena of [airplane] identification, it entered into a field totally preempted by federal jurisdiction." He argues that Alaska statutes do not confer jurisdiction on the superior court to "identify" airplanes. He does not explain what "identification" is in the context of federal aviation law or how it differs from the common meaning of "identification."

The Association responds that Schweitzer and Airflow Leasing placed the airplane identity issue before the superior court in the claim of exemptions and that Alaska statutes provide for determination of issues related to exemptions. It also argues that there is no conflict between Alaska statutes and federal aviation law, and that Congress did not intend to preempt state court airplane-ownership decisions.

The superior court is the court of general jurisdiction in Alaska.[17] We have previously recognized that the superior court has the inherent power to resolve ownership disputes related to property seized to satisfy a judgment and does not require specific statutory authorization to do so.[18] No one here questions the superior court's power to determine ownership of the seized airplane, yet the question of ownership essentially was all the superior court decided.

When the airplane was seized, the data plate had been removed. As a result the superior court could not use this information in determining who owned the seized property. Schweitzer and Airflow Leasing took the position that the seized airplane was Otter 26 and asked the superior court to recognize it as such; Schweitzer does not point to any argument made before the superior court asking it to defer to the FAA on the issue

---

[17] AS 22.10.020(a) ("The superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters . . . .").

[18] *Keltner v. Curtis*, 695 P.2d 1076, 1079 & n.4 (Alaska 1985).

of identifying the airplane.[19]

The evidentiary hearing's purpose was to consider Reesor and Airflow Leasing's claim that Airflow Leasing owned the seized property, which they identified as Otter 26. After taking evidence, the superior court determined that Reesor and Airflow Leasing owned Otter 26 and that the tail of Otter 26 was part of the seized airplane. To protect Airflow Leasing's interest, the superior court modified the sale process by requiring that any excess money from the sale be paid into the court registry rather than to Schweitzer directly.

Although the superior court decided that the "former tail section of Otter 26" became part of Otter 398 and that the seized property was "the partially re-built Otter 398," it did not, as Schweitzer claims, "attempt[] to direct" the installation of a data plate on the seized aircraft. Instead it recognized that the seized airplane was composed of parts of two different airplanes; found that Airflow Leasing owned Otter 26, the tail section of the seized airplane; and rejected Schweitzer's testimony that he no longer owned Otter 398. Because Schweitzer owned Otter 398, the superior court concluded the Otter could be sold to satisfy the judgment. Neither Schweitzer nor Reesor and Airflow Leasing appealed the merits of the superior court's ownership decision.

Schweitzer argues that sections of 14 C.F.R. Part 45 preempt any state identification of aircraft. Federal regulations govern a manufacturer marking an aircraft with identification and restrict alteration of that identification.[20] But nothing in the regulations expressly prohibits a state court from looking beyond the registration number

---

[19] The record reflects that the FAA was aware of the contested ownership proceeding and asked the attorneys for the Association and Airflow Leasing to inform the court that the FAA had "no position" about the aircraft's identification at the time of the ownership hearing.

[20] 14 C.F.R. §§ 45.10-45.16 (2012).

to determine ownership, particularly when there is no identifying information on the aircraft at the time it is seized.[21] In this case the court had to identify, in the common sense of the word, what the Association had seized to determine whether Airflow Leasing had an ownership interest in the property; the court did not usurp the FAA's role in regulating airplane safety[22] or providing a central clearinghouse for recording interests in civil airplanes.[23]

Congress has specifically stated that a certificate of registration is not evidence of ownership.[24] And the record shows that the FAA was aware of the ownership litigation but took no position in the dispute. Finally, as shown by the FAA's later permission to place a replacement data plate on Otter 26, the superior court's decision also did not stand as an obstacle to the enforcement or implementation of federal airplane identification regulations, which would be the basis for federal preemption.[25] The superior court had subject matter jurisdiction to decide what the Association had seized and who owned it, and the court correctly denied the Rule 60(b)(4) motion.

---

[21] *Cf. Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 156 S.W.3d 228, 239-40 (Ark. 2004) (affirming trial court decision that determined ownership of airplane when data plates on two airplanes had been switched).

[22] *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 368-69 (3d Cir. 1999) (identifying purpose of FAA as regulating air safety).

[23] *See Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 411 (1983).

[24] 49 U.S.C. § 44103(c) (2006) ("A certificate of registration issued under this section is . . . not evidence of ownership of an aircraft in a proceeding in which ownership is or may be in issue.").

[25] *Cf. Philko Aviation*, 462 U.S. at 410 (citations omitted) (holding that Federal Aviation Act recording requirement preempted state laws permitting undocumented or unrecorded transfers of aircraft because of direct conflict between federal and state laws).

**B.** **The Superior Court Did Not Abuse Its Discretion In Denying Relief From Judgment Under Rule 60(b)(2) Based On Schweitzer's Offered Evidence.**

Schweitzer, joined by Reesor and Airflow Leasing, also argues two pieces of new evidence filed with his Rule 60(b) motion entitled him to relief from the superior court's ownership decision.[26] The first is a letter from an FAA maintenance inspector approving the installation of a replacement data plate on Otter 26. The second is a replacement data plate issued by the manufacturer for Otter 26. The superior court denied relief, ruling that the new evidence had no bearing on its prior ownership decision.

This court has held that five elements must be met before a movant is entitled to relief under Rule 60(b)(2).[27] "The newly discovered evidence must: (1) . . . probably change the result on a new trial; (2) have been discovered since the trial; (3) be of such a nature that it could not have been discovered before trial by due diligence; (4) be material; (5) not be merely cumulative or impeaching."[28]

We find no abuse of discretion in the superior court denying relief under Rule 60(b)(2). As noted above, FAA registration is not evidence of ownership, and it

---

[26] Rule 60(b)(2) provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . .

[27] *Babinec v. Yabuki*, 799 P.2d 1325, 1332-33 (Alaska 1990).

[28] *Id.*

-11- 6825

is clear from the superior court's lengthy recitation of the basis for its ownership decision when denying Schweitzer's Rule 60(b)(2) motion that this evidence would not have changed the ownership decision on a new trial.[29]

## C. Whether The Superior Court Improperly Modified The Statutory Sale Procedures Is Moot.

The superior court found good cause to modify the sale procedures codified at AS 09.35.110, .140, .150, and .160. Based on Schweitzer's disclaimer of interest in the Otter and Airflow Leasing's ownership of Otter 26, the superior court modified the procedure under AS 09.35.110 by ordering any excess sale proceeds to be paid into the court's registry. It also modified the procedure outlined in AS 09.35.140, .150, and .160 by requiring that the sale proceed no earlier than 45 days from the decision's distribution date and requiring the Association to advertise the sale "in a manner that is reasonably likely to reach interested wrecked Otter buyers globally." It appears that the modifications to the process were intended to increase the sale value of the seized property, to the benefit of all parties.

Schweitzer, joined by Reesor and Airflow Leasing, argues that the superior court's modifications constitute reversible error. The Association responds that this issue is waived for inadequate briefing and is moot. Because we hold this issue is moot, we do not consider the Association's alternative arguments.

The seized Otter actually was not sold at an execution sale. Reesor paid the Association $85,000 to satisfy the judgment against Schweitzer and took possession of the Otter. "A claim is moot if it is no longer a present, live controversy, and the party

---

[29] We therefore do not reach the question whether newly discovered evidence under Rule 60(b)(2) must have existed at the time of the original trial. *Cf. Nat'l Labor Relations Bd. v. Jacob E. Decker & Sons*, 569 F.2d 357, 364 (5th Cir. 1978) (stating general federal rule that "evidence must be in existence at the time of the trial").

bringing the action would not be entitled to relief, even if it prevails."[30] Because Schweitzer, Reesor, and Airflow Leasing have not shown they would be entitled to relief even if they prevailed on this issue, it is moot. The superior court's modification of the sale procedure also does not impact prevailing party status, so we have no reason to consider it in reviewing the attorney's fees awarded here.[31]

## D. The Court Did Not Err In Awarding Attorney's Fees.

### 1. Fees against Schweitzer

Schweitzer argues that the Association cannot be considered the prevailing party because the superior court had no subject matter jurisdiction to enter its April 2010 ownership decision — we rejected this argument above. He also argues that attorney's fees cannot be awarded in post-judgment proceedings and his involvement in the hearing on his claim of exemptions cannot support an award of attorney's fees against him.

The superior court awarded the Association $3,000 in attorney's fees against Schweitzer for the time period of September 9, 2010, through November 2010. This time period began with Schweitzer's Rule 60(b) motion; the superior court awarded fees against Schweitzer only for the time that he actively participated in the litigation.

In *Torrey v. Hamilton* we stated that Rule 82 "only provides compensation for attorney's services performed up to the time of the judgment"; Rule 82 cannot serve as a basis for awarding post-judgment attorney's fees against a judgment debtor for

---

[30] *Schweitzer v. Salamatof Air Park Subdivision Owners, Inc.*, 278 P.3d 1267, 1272 (Alaska 2012) (quoting *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002)) (internal quotation marks omitted).

[31] *See id.* at 1272-73 (considering otherwise moot issue to evaluate prevailing party status for attorney's fees).

collecting on the judgment.[32]  Schweitzer relies on *Torrey* to argue that the superior court erred in awarding fees against him.  But, as we have recognized previously, *Torrey* does not prohibit all awards of post-judgment attorney's fees.[33]  *Torrey* applies to attorney's fees awarded under Rule 82, but *Torrey* is not controlling here because there is an independent statutory basis for the attorney's fees award.[34]

Schweitzer initiated the relevant post-judgment proceedings by filing a putative claim of exemptions, alleging that he had no ownership interest in the seized airplane.  After the ownership hearing the superior court issued an order denying his claim of exemptions.  Alaska Statute 09.38.080(e), part of the Alaska Exemptions Act, authorizes a court to award "costs" to the prevailing party in a hearing on a claim of exemptions.[35]  We have held that when encountered in a statute, "the term 'costs' is

---

[32]    872 P.2d 186, 187-88 (Alaska 1994).

[33]    *See, e.g.*, *O'Connell v. Will*, 263 P.3d 41, 46 (Alaska 2011) (holding that contractual fee provision authorized award of attorney's fees for collection of judgment).

[34]    *See Torrey*, 872 P.2d at 187-88 (explaining "the award in this case is not authorized under Civil Rule 82").

[35]    AS 09.38.080(e) provides:

If any question arises as to the rights of an individual entitled to an exemption under this chapter, an interested person may file with the clerk of the court from which the process issued a statement of the claim of exemptions and the question raised.  The statement shall be referred to the court as soon as practicable thereafter.  The court shall order that notice of a hearing be given.  After hearing the matter, the court shall make findings and issue an appropriate order.  The court may award to the prevailing party costs of a proceeding under this subsection.

generally construed in Alaska to include attorney's fees."[36] Although the superior court did not require Schweitzer to pay any attorney's fees related to the evidentiary hearing itself, we agree with the Association that Schweitzer "set off the 'disputed ownership/seized property fray' " by filing his putative claim of exemptions. His Rule 60(b) motion sought to set aside the ownership decision, which was the outcome of the exemption hearing; the superior court thus was authorized to award the Association attorney's fees as the prevailing party on Schweitzer's putative claim of exemptions and his associated motion to set aside the ownership decision.

### 2. Fees against Reesor and Airflow Leasing

We also affirm the award of attorney's fees against Reesor and Airflow Leasing. Reesor and Airflow Leasing join in Schweitzer's arguments that *Torrey* prohibits post-judgment awards of attorney's fees and that AS 09.35.130, the statute on which they based their ownership claim in the superior court, does not authorize post-judgment awards of attorney's fees. The Association maintains that the trial court's determination that Reesor and Airflow Leasing were the "functional equivalent" of claimants in a replevin action was correct and should be the basis for affirming the attorney's fees award.

Although Alaska law does not generally allow an award of fees against a judgment debtor for attorney's fees related to executing on a judgment absent a statutory or contractual provision authorizing an award of fees,[37] Reesor and Airflow Leasing were not judgment debtors. Instead, they were third-party claimants who affirmatively asked

---

[36]     *Kenai Peninsula Borough v. Port Graham Corp.*, 871 P.2d 1135, 1141 (Alaska 1994).

[37]     *See O'Connell*, 263 P.3d at 46 (construing contract as permitting attorney's fees for collection efforts); *Torrey*, 872 P.2d at 187-88 (holding that costs of collection did not include post-judgment attorney's fees).

the court to find that the seized airplane was Otter 26, find that Airflow Leasing owned it, and order the Association to return it. Their request for an evidentiary hearing and the ensuing litigation was effectively a new action with different parties; as we stated in *Keltner v. Curtis*, the relief sought in a proceeding on a third-party claim under AS 09.35.130 is similar to a replevin action.[38] Rule 82 fees can be awarded to the prevailing party in a replevin action.[39] It seems likely that had Reesor and Airflow Leasing prevailed on the ownership claim, they would have been entitled to a Rule 82 attorney's fees award, at the very least.[40] Because the superior court did not abuse its discretion in finding that the Association was the prevailing party with respect to Reesor and Airflow Leasing's ownership claim, its Rule 82 fees award against them was permissible.

V. **CONCLUSION**

We AFFIRM the superior court's judgment.

---

[38]   695 P.2d 1076, 1079 n.5 (Alaska 1985).

[39]   *Haskins v. Shelden*, 558 P.2d 487, 495-96 (Alaska 1976).

[40]   *Cf.* AS 09.35.130 (outlining indemnity provisions when third party claims interest in seized property).