*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA JUDICIAL COUNCIL, | ) | |
| LARRY COHN, Executive Director | ) | Supreme Court Nos. S-14874/14893 |
| of the Alaska Judicial Council, | ) | |
| GAIL FENUMIAI, Director of the | ) | Superior Court No. 3AN-10-11796 CI |
| Division of Elections, and STATE OF | ) | |
| ALASKA, Division of Elections, | ) | O P I N I O N |
| | ) | |
| Appellants and | ) | No. 6938 – August 8, 2014 |
| Cross-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUSAN KRUSE, DENNY WELLS, | ) | |
| JAY HANSON, ALIYSHA MARTIN, | ) | |
| VICKI THOMPSON, VICTORIA | ) | |
| SHAMP, LISA WELLS, ALLISON | ) | |
| L. BISS, DANIEL J. ALPERT, and | ) | |
| NANCY D. LEE, | ) | |
| | ) | |
| Appellees and | ) | |
| Cross-Appellants. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Michael Spaan, Judge.

Appearances: Ruth Botstein, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellants/Cross-Appellees. Stephanie D. Patel, Law Office of Stephanie Patel, Anchorage, for Appellees/Cross-Appellants.

Before: Winfree, Stowers, Maassen, and Bolger, Justices. [Fabe, Chief Justice, not participating.]

STOWERS, Justice.

## I. INTRODUCTION

In 2010 the Alaska Judicial Council recommended that the electorate not retain a sitting district court judge. Susan Kruse and a handful of other voters[1] challenged the constitutionality of AS 22.15.195, which grants the Council power to make such recommendations. The superior court concluded that the statute is constitutional but enjoined the Council from releasing new information about the judge in the 60 days prior to an election. On appeal, we hold that AS 22.15.195 is constitutional and does not limit the Council's dissemination of new information. We thus affirm the superior court's ruling in part but reverse and vacate the superior court's injunction prohibiting the Council's public dissemination of new information in the 60 days preceding an election.

## II. FACTS AND PROCEEDINGS

The Alaska Constitution provides that each "judge shall . . . be subject to approval or rejection on a nonpartisan ballot."[2] The frequency of these retention elections varies for supreme court justices and judges of the court of appeals, superior court, and district court.[3] Relevant to this appeal, a district court judge "shall be subject to approval or rejection at the first general election held more than two years after the

---

[1] For simplicity we refer to the appellants collectively as Kruse.

[2] Alaska Const. art. IV, § 6; *see* Alaska Const. art IV, § 4 ("Judges of other courts shall be selected in a manner, for terms, and with qualifications prescribed by law."); AS 15.35.100 ("Each district judge shall be subject to approval or rejection at the first general election held more than two years after the judge's appointment . . . . If approved, the judge shall thereafter be subject to approval or rejection in a like manner every fourth year."). Although AS 15.35.100 controls the retention of district court judges, we cite to the Alaska Constitution because the Constitution first adopted the retention system.

[3] *See* Alaska Const. art. IV, § 6; Alaska Const. art. IV, § 4; AS 15.35.100.

judge's appointment" and "every fourth year" thereafter.**4** The Alaska Judicial Council — which consists of three members of the public, three attorneys, and the Chief Justice of the Alaska Supreme Court — is tasked with implementing the retention election system. The legislature has delineated these duties in AS 22.15.195, which provides that the Council will "conduct an evaluation of each judge before the retention election and . . . provide to the public information about the judge and may provide a recommendation regarding retention or rejection." Since 1976 the Council has recommended non-retention of a judge only twelve times, and seven of those times the voters have nonetheless voted to retain the judge.**5**

In July 2010 the Council recommended that a sitting district court judge not be retained in the November 2, 2010 election. The Council cited "mental health difficulties" and "constant friction between [the judge] and other judges, court administrators, and court staff." The Council also released the numerical scores of the evaluation of the judge;**6** the judge was rated as acceptable to good. After the recommendation was released there was extensive media coverage, including a post by

---

**4** AS 15.35.100(a).

**5** After we heard oral argument in this appeal, the Judicial Council issued its recommendations for retention of judges standing for retention election in the November 2014 general election. The Council recommended non-retention of one judge, bringing the number since 1976 to twelve judges. *2014 Retention Information*, ALASKA JUDICIAL COUNCIL, http://www.ajc.state.ak.us/retention/retent2014/ret2014.html (last visited July 21, 2014). It remains to be seen whether the electorate retains this judge.

**6** As part of its evaluation process, the Council obtains ratings from members of the Alaska Bar Association, jurors, police officers, court employees, and others, who rate judges standing for retention election on a number of subjects, including legal ability, diligence, temperament, and impartiality. The Council reports the results of the ratings as part of its evaluation provided to the public.

a local blogger questioning the recommendation, an opinion piece in the Anchorage Daily News by the Council's executive director, and radio interviews with both the judge and the Council's executive director. The Council also hired a well-known local figure to be its spokesperson for purposes of explaining its recommendation not to retain the judge.

Kruse filed her first complaint on October 29, 2010, a few days prior to the election. The retention election took place on November 2, and the judge was not retained. Kruse filed an amended complaint on November 18, alleging five causes of action, mainly relating to the extent of the Council's advertising in the judge's retention election,[7] but also attacking the constitutionality of AS 22.15.195, which allows the Council to make recommendations.[8] The election was certified on December 1, 2010, over Kruse's objections. And on December 15, 2010, the judge stipulated, as part of an agreement with the Alaska Commission on Judicial Conduct, that he would "at no time in the future seek or hold a position as a judicial officer in the State of Alaska."[9]

---

[7] The amended complaint alleged that: (1) the Council failed to meet its duty to provide information; (2) the Council "violated the public trust" by selectively releasing material; (3) the Council exceeded its statutory authority by taking an adversarial role; and (4) the Council's actions were a "corrupt practice" under AS 15.20.540. The superior court found these claims moot because the election had already occurred by the time the case was ripe for decision. On appeal Kruse has "waive[d] specific consideration of the issue of mootness as to those issues that are not specifically related to the constitutionality of the . . . statute."

[8] AS 22.15.195 provides: "The judicial council shall conduct an evaluation of each judge before the retention election and shall provide to the public information about the judge and may provide a recommendation regarding retention or rejection."

[9] The Alaska Commission on Judicial Conduct, which investigates allegations of judicial misconduct, filed a complaint against the judge on April 30, 2010. The judge answered on June 1 denying the allegations and arguing that he was being

(continued...)

Kruse moved for summary judgment on her fourth cause of action — the constitutionality of AS 22.15.195 — arguing that it conflicts with various sections of the Alaska Constitution. In the alternative, she contended that the Council exceeded its statutory authority by engaging in "executive patronage" and by releasing information about the judge in the 60 days before the election. The Council filed a cross-motion for summary judgment, arguing that the constitutional challenge was moot and, if not, the Alaska Constitution gives the legislature a broad grant of power to delineate the duties of the Council.

The superior court concluded that although "[Kruse] would not be entitled" to the majority of the relief she requested, the constitutional claims were "subject to limited review for declaratory relief." The court concluded that AS 22.15.195 is constitutional because article IV, section 9 of the Alaska Constitution gives a broad grant of power to the legislature to decide the duties and powers of the Council. But the court determined that the statute does not allow the Council to publish new information within 60 days of an election. It concluded that the legislature wanted to give judges time to withdraw from the retention election if they received an unfavorable evaluation, and allowing the Council to publish new information would conflict with this purpose. Finally, the court denied both parties' motions for attorney's fees because it concluded that it was "inappropriate to award attorney's fees on Plaintiff's constitutional claim, and . . . neither [the Council] nor [Kruse] can be considered the 'prevailing party' for purposes of awarding attorney's fees."

---

[9](...continued) retaliated against for reporting workplace discrimination. The judge moved to dismiss the charges on September 24. After he was not retained, the judge entered into a stipulation with the Commission whereby he agreed to be publicly censured and never again hold judicial office in Alaska.

The Council moved for a stay of the ruling prohibiting dissemination of new information pending appeal, arguing that the injunction barring it from releasing new information would have drastic, unintended policy consequences in the coming retention elections. The superior court granted the stay, noting that "[g]iven the factual context of this case, the question of whether the [Council] may publish new information *in support* of a judge within the 60 days preceding a retention election was not properly before the Court." (Emphasis in original.) The court concluded that it was "unclear as to whether this was the intent of the legislature" and explained that "certain policy concerns may lead to a different result."

Both the Council and Kruse appeal. The Council appeals the superior court's order that it cannot release new information in the 60 days preceding an election; Kruse appeals the superior court's ruling upholding the constitutionality of AS 22.15.195 and the court's decision regarding attorney's fees under Rule 82.[10]

## III. STANDARD OF REVIEW

"We apply our independent judgment in determining mootness because, as a matter of judicial policy, mootness is a question of law."[11] We also "review constitutional questions independently"[12] and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[13] "The interpretation of a

---

[10] It is unclear whether on appeal Kruse is arguing that she "prevailed" on the constitutional issues as well. But, as we do not reach the merits of the attorney's fees appeal, we do not attempt to discern her arguments.

[11] *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005) (citing *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)).

[12] *Alaskans for Efficient Gov't, Inc. v. State*, 153 P.3d 296, 298 (Alaska 2007).

[13] *Schweitzer v. Salamatof Air Park Subdivision Owners, Inc.*, 308 P.3d 1142, 1147 (Alaska 2013) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979))
(continued...)

statute . . . is a question of law to which we apply our independent judgment,"[14] "taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[15]

## IV.    DISCUSSION

There are three main issues on appeal:  (1) whether Kruse's constitutional challenge is moot; (2) whether AS 22.15.195 is constitutional; and (3) whether AS 22.15.195 prohibits the Council from releasing new information in the 60 days prior to a retention election.  Kruse also appeals the superior court's denial of her motion for attorney's fees.

### A.    The Constitutional Claims Are Not Moot.

The Council argues that the superior court erred by reaching the merits of AS 22.15.195's constitutionality and scope.  The Council believes these issues are moot because they "were rooted in the [Council]'s allegedly misleading communications about [the judge] in particular."  In response, Kruse argues that the controversy "continues to flourish" because Kruse's "claims . . . were much broader than the [Council] contend[s]."

We will not consider claims "where events have rendered the legal issue moot."[16]  A claim can be moot either because "it has lost its character as a present, live

---

**13**(...continued)
(internal quotation marks omitted).

**14**    *West v. State, Bd. of Game*, 248 P.3d 689, 694 (Alaska 2010) (citing *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008)).

**15**    *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999) (citing *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976, 979 (Alaska 1997)).

**16**    *Mullins v. Local Boundary Comm'n*, 226 P.3d 1012, 1017 (Alaska 2010) (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1195 (Alaska 1995)) (continued...)

controversy," or because "the party bringing the action would not be entitled to any relief even if it prevails."[17] A court may "declare the rights and legal relations of an interested party," but only "[i]n [the] case of an actual controversy."[18] In order to be an "actual controversy," the controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[19] We have noted that "[m]ootness is particularly important in a case seeking a declaratory judgment because there is an added risk that the party is seeking an advisory opinion."[20]

Claims for declaratory relief are commonly moot when the statute or regulation at issue is no longer in effect or has been amended. In *Kodiak Seafood Processors Association*, the Commissioner of the Alaska Department of Fish and Game issued a permit allowing exploratory scallop fishing in an area of Kodiak previously closed to scallop fishing.[21] The Kodiak Seafood Processors Association brought suit requesting a declaration that the Commissioner had exceeded his authority, but, before

---

[16](...continued)
(internal quotation marks omitted).

[17]     *Id.* (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)) (internal quotation marks omitted).

[18]     AS 22.10.020(g).

[19]     *Jefferson v. Asplund*, 458 P.2d 995, 999 (Alaska 1969).

[20]     *Kodiak Seafood Processors Ass'n*, 900 P.2d at 1195; *Ahtna Tene Nene v. State, Dep't of Fish & Game*, 288 P.3d 452, 457-58 (Alaska 2012) ("Even in a declaratory judgment case . . . where the rights or obligations of parties are delineated by the court, courts should avoid becoming involved in premature adjudication of disputes that are uncertain to occur." (quoting *Ulmer*, 33 P.3d at 776) (internal quotation marks omitted)).

[21]     *Kodiak Seafood Processors Ass'n*, 900 P.2d at 1193.

the court could hear the case, the permit expired.[22] We held that the question whether the Commissioner had exceeded his authority was "technically moot."[23] Similarly, in *Vanek v. State, Board of Fisheries*, commercial salmon fishers challenged a Board of Fisheries regulation as a taking.[24] We held that the issue was "likely . . . moot" because "the challenged board regulations ha[d] been amended."[25]

Unlike those cases, AS 22.15.195 is still in effect and in the same form as at the start of this litigation. Moreover, Kruse did not frame her fourth cause of action — the constitutionality of AS 22.15.195 — in terms of the specific judge. Instead, Kruse asked for declaratory relief that AS 22.15.195 is "unconstitutional to the extent it directs the Alaska Judicial Council to make recommendations concerning judicial retention." The Council's argument that "[a]t its core, this case was an election contest" is incorrect; the controversy is broader than the specific judge's election. The parties are adverse, and we are able to grant relief in the form of a declaration on the constitutionality of AS 22.15.195. Thus, Kruse's constitutional claims are not moot.

B.     **The Superior Court Did Not Err By Concluding That AS 22.15.195 Is Constitutional.**

Alaska Statute 22.15.195 provides that "[t]he judicial council . . . may provide a recommendation regarding retention or rejection." Kruse argues that allowing a state agency to take a "biased position on any ballot measure" "stifles the very

---

[22]     *Id.* at 1193-95.

[23]     *Id.* at 1196; *see also Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 366 (Alaska 2014); *Ahtna Tene Nene*, 288 P.3d at 458 (holding that a request for declaratory relief was moot because the challenged regulation was amended and no longer operative).

[24]     *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 286 (Alaska 2008).

[25]     *Id*. at 287.

foundation of democracy." As the party challenging the constitutionality of this statute, Kruse bears the burden of "demonstrating the constitutional violation."[26] In addition to overcoming "a presumption of constitutionality," the challenging party must counter "every conceivable basis which might support [the statute]."[27]

Kruse argues that AS 22.15.195 is unconstitutional, but in her 37-page brief she fails to cite what provisions of the Alaska Constitution conflict with the statute. Kruse cites no Alaska cases, and the cases from other states that she does cite only establish that a public agency's election recommendation is improper in the absence of an explicit legislative directive.[28] As the Council has an explicit grant of authority from the Alaska Legislature to make recommendations, these cases are inapplicable. Kruse advances no other legal authority demonstrating why AS 22.15.195 might be unconstitutional; thus she has failed to meet her heavy burden. While reasonable people may disagree whether it is good public policy to authorize a state agency to make recommendations to the public on how the public should vote, we defer to the legislature to make this policy decision because the Alaska Constitution vests broad power in the

---

[26] *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001) (quoting *Baxley v. State*, 958 P.2d 422, 428 (Alaska 1998)).

[27] *Id*. (quoting *Katmailand, Inc. v. Lake & Peninsula Borough*, 904 P.2d 397, 401 (Alaska 1995)) (internal quotation marks omitted).

[28] *See, e.g.*, *Stanson v. Mott*, 551 P.2d 1, 3 (Cal. 1976) (en banc) ("[A]t least in the absence of clear and explicit legislative authorization, a public agency may not expend public funds to promote a partisan position in an election campaign."); *Citizens to Protect Pub. Funds v. Bd. of Educ. of Parsippany-Troy Hills Twp.*, 98 A.2d 673, 677 (N.J. 1953) (holding that the power to issue a pamphlet advocating one position was "not within the implied power [of the board of education] and is not lawful in the absence of express authority from the Legislature"); *Stern v. Kramarsky*, 375 N.Y.S.2d 235, 236-37 (N.Y. 1975) ("Neither the language of the statutory authority . . . nor the statutory scheme . . . contemplates administrative agencies engaging in promotional activities.").

legislature with regard to the Council.[29]  We hold that AS 22.15.195 does not violate the Alaska Constitution.

**C.**      **The Council Did Not Exceed Its Statutory Authority By Advertising Or Disseminating New Information In The 60 Days Prior To An Election**.

Kruse also argues that the Council engaged in unauthorized activity when it advertised its recommendations and released new information to the public in the 60 days prior to the retention election.  The Council counters that the plain language of the statute and its legislative history do not support reading in a restriction on either the means or the time frame in which the Council's information and recommendations are transmitted to the voters.  The superior court determined that under AS 22.15.195 the Council could disseminate information in any way it saw fit but it could not release any new information in the 60 days prior to the election.

We begin by interpreting AS 22.15.195.  This requires that we examine the language of the statute "construed in light of its purpose."[30]  We aim to give effect to the legislature's intent while taking into consideration "the meaning the statutory language conveys to others" — the plain meaning of the statute.[31]  We use a sliding scale on matters of statutory interpretation:  "the plainer the language of the statute, the more convincing contrary legislative history must be."[32]  We give weight to an agency's

---

[29]      *See* Alaska Const. art. IV, § 9.

[30]      *Beck v. State, Dep't. of Transp. & Pub. Facilities*, 837 P.2d 105, 116-17 (Alaska 1992) (citing *Vail v. Coffman Eng'rs, Inc.*, 778 P.2d 211, 213 (Alaska 1989)).

[31]      *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1234 (Alaska 2003) (quoting *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996)) (internal quotation marks omitted).

[32]      *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082

(continued...)

longstanding and continuous interpretation of a statute.[33] A longstanding agency interpretation may also be viewed as legislative acquiescence to that interpretation.[34]

### 1. The Council's chosen means of disseminating information did not exceed its statutory authority.

Alaska Statute 22.15.195 mandates that "[t]he information and the recommendation shall be made public at least 60 days before the election. The judicial council shall also provide the information and any recommendation to the office of the lieutenant governor in time for publication in the election pamphlet." The purpose of AS 22.15.195 is to "allow the [Council] to inform the public of relevant information" concerning the judges standing for retention election.

Kruse argues that the Council's "virile partisan activity" exceeds the authority granted by AS 22.15.195, directing her arguments towards the Council's

---

[32](...continued)
(Alaska 2011) (quoting *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)) (internal quotation marks omitted).

[33] *See, e.g.*, *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1261 (Alaska 2005) (finding the agency interpretation guiding when longstanding); *Storrs v. State Med. Bd.*, 664 P.2d 547, 552 (Alaska 1983) (holding that a "statutory construction adopted by those responsible for administering a statute should not be overruled in the absence of 'weighty reasons' " (quoting *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971))); *Nat'l Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 815-16 (Alaska 1982) (court should give weight under independent judgment standard to longstanding agency interpretation); 2B NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 49:04, at 77-78 (7th ed. 2012) (courts should give weight to longstanding statutory construction).

[34] *See Twenty-Eight (28) Members of Oil, Chem. & Atomic Workers Union, Local No. 1-1978 v. Emp't Sec. Div. of Alaska Dep't of Labor*, 659 P.2d 583, 589 (Alaska 1983) ("[T]he legislature's acquiescence in [the] formerly consistent interpretation . . . indicates that the legislature intended [the statute] to be interpreted under the majority rule.").

opinion piece, radio segment, and use of a well-known spokesperson. But Kruse fails to engage in any statutory interpretation or present any legislative history in support of her arguments. The superior court concluded that AS 22.15.195 requires the Council to independently advertise the information it gathers and evaluates because the Council is required to publish the information 60 days before an election, but the election pamphlet[35] circulated to the voters is published only 22 days before an election.

Alaska Statute 22.15.195 neither prescribes nor proscribes how the "information and recommendation" must be released. But because the "information and recommendation" must be released before the election pamphlet is distributed, the legislature must have envisioned it would be disseminated in some way other than in the election pamphlet. We find persuasive the superior court's reasoning on this point. Moreover, in order for the Council to be effective in its public information purpose, the information from the Council's evaluations must be disseminated as widely as possible.[36]

---

[35] The election pamphlet is circulated to each registered voter's household and is also available online. It includes information on the candidates and the ballot measures presented. *Official Election Pamphlets*, STATE OF ALASKA, DIVISION OF ELECTIONS, http://www.elections.alaska.gov/pub_oep.php (last visited July 21, 2014).

[36] *See, e.g.*, Seth S. Andersen, *Judicial Retention Evaluation Programs*, 34 LOY. L.A. L. REV. 1375, 1386 (2001) ("Colorado's experience should serve as a cautionary tale to other states — sufficient funds for dissemination of results must be a precondition for establishing a retention evaluation program."); *see also Transparent Courthouse: A Blueprint for Judicial Performance Evaluation*, INSTITUTE FOR THE ADVANCEMENT OF THE AMERICAN LEGAL SYSTEM, 8, 10 (2006), *available at* http://iaals.du.edu/images/wygwam/documents/publications/TCQ_Blueprint_JPE200 6.pdf ("To serve the purpose of educating and informing the electorate, the commission's conclusions must be widely disseminated. A commitment to public judicial performance evaluation involves a concomitant commitment to assuring that the results are widely known: by the use of websites, press coverage[,] and even advertisements."); *Guidelines for the Evaluation of Judicial Performance with Commentary*, app. 1, AMERICAN BAR ASSOCIATION, 4 (Feb. 2005), *available at*
(continued...)

Because the purpose of AS 22.15.195 is to "allow the [Council] to inform the public of relevant information," the Council must be allowed to do so in the most effective way, within any limits established by the legislature. Here, AS 22.15.195 contains no such limits.

The fact that Kruse does not agree with the method the Council has chosen to disseminate the information does not make its choice unconstitutional or violative of the Council's authorizing statutes. Under the plain statutory language before us, and in the absence of any contrary legislative history,[37] we cannot say that the Council's method of advertisement exceeded the authority granted by the statute.

### 2. The Council did not exceed its statutory authority by disseminating new information within 60 days of an election.

The Council argues that the superior court erred by construing AS 22.15.195 to disallow publication of new information within 60 days of an election. It contends that no limitations exist in the plain language of the statute, and the legislature's primary objective was to "increase the flow of information to ensure that voters could make informed decisions at the ballot box." Kruse again argues that the Council's "virile partisan activity" is improper, but again she provides no statutory analysis to support her argument.

---

[36](...continued)
http://www.americanbar.org/content/dam/aba/publications/judicial_division/aba_blac kletterguidelines_jpe_wcom.authcheckdam.pdf ("In states where judges must be reelected or retained by the voters, performance evaluation results should be disseminated as widely as possible, including by mail, on the Internet, in state and local newspapers, and/or in public facilities such as libraries and courthouses.").

[37] *See infra* notes 40-43 and accompanying text.

Under AS 22.15.195, "[t]he information and the recommendation shall be made public at least 60 days before the election."[38]  The plain meaning of the statute mandates that the Council release its recommendation and its evaluation of the judge at least 60 days prior to the election.  The statute does not impose further requirements or restrictions.  The statute does not distinguish between old and new information, or discuss the time frame in which each type must be published; it simply states that the Council must publish its information and recommendation at least 60 days prior to the election. Kruse has failed to provide any statutory analysis that would support a prohibition from disseminating new information in the 60 days preceding an election.

Moreover, the Council's interpretation is longstanding and continuous. The Council has frequently requested funds from the legislature to advertise in the 60 days before an election, and the record shows that the majority of the time this has included advertising new information.  From this we conclude that the legislature itself interprets AS 22.15.195 as permitting the Council to provide the public with additional information within the 60 days prior to an election.

Because the plain meaning of the statute does not support a distinction between old and new information, legislative history must be convincing to reach a contrary result.[39]  But the legislative history is extremely scant.  In April 1975 Judicial Council staff testified before the House Judiciary Committee, asking for "specific statutory authority to evaluate judges' qualifications and convey this information and recommendation to the public."[40]  House Bill 384 was drafted to give the Council the

---

[38]     AS 22.15.195.

[39]     *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011).

[40]     H. Judiciary Comm., Statement for H.B. 384, 9th Leg., 1st Sess., *available* (continued...)

specific authorization it asked for.  The Bill was read for the first time on April 7, 1975,[41] and, after further legislative consideration without any recorded discussion, was signed into law eight weeks later, on May 21, 1975.[42]  In 1980 the legislature amended AS 22.15.195 to require that the Council's information and recommendations be made public 60 days before the election, instead of 30 days before.[43]

The superior court concluded that the change from 30 to 60 days was meant to "give judges more time to contemplate resignation [instead of standing for] retention election or to mount an opposition to the council's recommendation."  The court's conclusion was based on a legislative staffer's memorandum asking that the Bill be amended to read "90 days instead of 60."[44]  But the staffer's suggestion was not adopted,[45] indicating that the legislature did not share this view.  The staffer's unadopted recommendation does not rise to the level of "convincing contrary legislative history."[46] For these reasons it was error for the court to construe AS 22.15.195 to prohibit the

---

[40](...continued)
*at* Alaska Leg. Microfiche Collection No. 227; ch. 87, § 3, SLA 1975.

[41]     1975 House Journal 675, 680.

[42]     Ch. 87, SLA 1975.

[43]     Ch. 12, § 13, SLA 1980.

[44]     Memo from Peggy Berck, Staffer, to Representative Charlie Parr, Chairman, 11th Leg., 2d Sess., *available at* Alaska Leg. Microfiche Collection No. 962.

[45]     AS 22.15.195 (requiring dissemination 60 days prior to election instead of 90).

[46]     *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)) (internal quotation marks omitted).

Council from disseminating new information within 60 days of an election.  Therefore, the court's injunction must be vacated.

### D. The Attorney's Fee Decision Must Be Remanded.

The superior court did not award attorney's fees because it concluded: "[I]t is inappropriate to award attorney's fees on Plaintiff's constitutional claim, and . . . neither the [Council] nor [Kruse] can be considered the 'prevailing party' for purposes of awarding attorney's fees [under Rule 82]." Kruse argues that this ruling was error.  Because we reverse the superior court's order on the construction of AS 22.15.195, we remand the attorney's fees issue to the superior court for its reconsideration.

## V. CONCLUSION

We AFFIRM the superior court's decision regarding the constitutionality of AS 22.15.195 and the Council's statutory authority to make and disseminate its recommendation to the electorate.  We REVERSE the superior court's statutory construction limiting the Council's dissemination of new information within 60 days of the election.  We VACATE the superior court's injunction and REMAND for reconsideration of the attorney's fees issue.